IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **PRAETORIAN INSURANCE CO.,** a member company of **QBE NORTH AMERICA**<br><br>            Plaintiff,<br><br>v.<br><br>**VENKATESH SATTARU**,<br><br>Serve at: 301 N 2ND ST., DEP'T OF CORRECTIONS, ST. CHARLES, MO 63301<br><br>and<br><br>**NITYA SATTARU,**<br><br>Serve at: 342 CHESTNUT CREEK CIR., DARDENNE PRAIRIE, MO 63368<br><br>and<br><br>**JOHN DOE,**<br><br>and<br><br>            Defendants. | Case No. |

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW Praetorian Insurance Company (hereinafter "Praetorian"), a member company of QBE North America, by its attorneys, Sandberg Phoenix & von Gontard P.C., and for its Complaint for Declaratory Judgment, pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, states as follows:

### NATURE OF THE ACTION

1.   Praetorian brings this Complaint for Declaratory Judgment pursuant to 28 U.S.C. § 2201 and Rule 57 seeking declarations that it has no duty under certain homeowners policies

issued to Defendants Venkatesh Sattaru ("Mr. Sattaru") and Nitya Sattaru ("Mrs. Sattaru") to defend or indemnify them in connection with claims brought by John Doe against them and other defendants alleging human trafficking for forced labor.

## PARTIES, JURISDICTION, AND VENUE

2. Praetorian is an insurance company that is a member company of QBE North America and is incorporated under the laws of the State of Pennsylvania with its principal place of business in Sun New York. Praetorian is a citizen of Pennsylvania and New York.

3. Defendant Mr. Sattaru is a Missouri citizen.

4. Defendant Mrs. Sattaru is a Missouri citizen.

5. Defendant John Doe ("John Doe" or "Underlying Plaintiff") is on information and belief a resident of Missouri and an Indian national.

6. No specific relief is requested against John Doe, but he is a party to the underlying state court litigation and has asserted a claim for damages against the insureds on the insurance policy at issue in this case and has therefore been joined to be bound by the Court's judgment herein. If John Doe stipulates to be bound by the declaration and rights herein, Praetorian will dismiss him from this matter.

7. There is a current case and controversy between the parties to this action.

8. This Complaint for Declaratory Judgment is initiated pursuant to Rule 57 of the Federal Rules of Civil Procedure and the Federal Declaratory Judgment Act, codified at 28 U.S.C. Sections 2001 and 2201, to obtain a declaration of Praetorian's rights and obligations under a certain insurance policies issued by Praetorian as Praetorian has a good faith coverage dispute as to its duties, rights, and obligations under the policies at issue.

9. This Court has original jurisdiction over this matter under 28 U.S.C. § 1332(a) because it is a civil action between citizens of different states, as well as a citizen of a foreign state, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10. Venue is proper in the United States District Court for the Eastern District of Missouri under 28 U.S.C. § 1391(b)(2), and Local Rule 2.07, because a substantial part of the events giving rise to this action took place within the Eastern District of Missouri and because on information and belief Defendants Mr. and Mrs. Sattaru reside within the Eastern District.

## FACTS COMMON TO ALL COUNTS

### The Underlying Lawsuit

11. On March 5, 2024, Underlying Plaintiff John Doe filed a Petition in the Circuit Court of St. Charles County, Missouri, Cause No.: 2411-CC00257 ("Underlying Lawsuit"), alleging that Mr. Sattaru, Mrs. Sattaru, Nikhil Penmatsa ("Mr. Penmatsa"), Sravan Penumetcha ("Mr. Penumetcha") (collectively "Underlying Defendants") and companies allegedly owned and operated by and/or employing them— iWorkout Fitness Company, Keysoft IT Inc., Nivaayu Inc., DzynWorks LLC, Absolute BBQ LLC, Instant Indian Inc., Mughals2 LLC, Mughals Inc., PenRD LLC, and Mughals1 LLC (collectively "Defendant Companies")—conspired to lure John Doe to come to the United States for the purpose of forced labor, peonage, slavery, and/or involuntary servitude. A true and accurate copy of the Petition is attached as **Exhibit A** and is incorporated by reference as if fully set forth herein. The Secretary of State Business Filings for the Defendant Companies are attached as **Exhibit B**.

12. The Underlying Lawsuit alleges that Mr. Sattaru, Mr. Penmatsa, and Mr. Penumetcha held John Doe captive at their residences, assaulted him, and forced him to work for the benefit of all Underlying Defendants and Defendant Companies. *See* Exhibit A, Petition ¶ 24.

Mrs. Sattaru is alleged to have been aware of John Doe's circumstances and to have had him in her care, custody, and/or control. *See id.* at ¶ 29.

13. Count I of the Underlying Lawsuit alleges that Underlying Defendants committed battery and/or conspired to commit battery against John Doe, causing John Doe to suffer serious physical injury, pain and suffering, financial loss, lost income, emotional distress, as well as future pain and suffering and economic damages, for which John Doe seeks compensatory damages in excess of $25,000. *See id.* at ¶¶ 33–38.

14. Count II alleges that Underlying Defendants and Defendant Companies violated 18 U.S.C. § 1595 by knowingly benefitting, attempting to benefit, or conspiring to benefit, financially or for other value, from participating in John Doe's trafficking and forced labor. Count II alleges the same harms and damages as above. *See id.* at ¶¶ 39–42.

15. Count III alleges that Underlying Defendants falsely imprisoned John Doe by detaining and/or restraining him against his will under an agreement and/or meeting of the minds to use said false imprisonment to unlawfully benefit from John Doe's forced labor. Count IV alleges the same harms and damages as above. *See id.* at ¶¶ 43–48.

16. Count IV alleges negligence against Mrs. Sattaru, specifically that she owed John Doe a duty to act as a reasonable person under the circumstances and breached that duty by (a) failing to render aid when contributing to placing and placing John Doe in peril by continuing to expose him to Defendants Mr. Sattaru, Mr. Penmatsa, and/or Mr. Penumetcha, whom she knew were beating, harming, and assaulting John Doe, and when she knew he was falsely imprisoned; (b) failing to report the felonies committed against John Doe at her residence; (c) failing to properly care for John Doe; and (d) failing to protect John Doe from known, dangerous third

4

persons, namely Defendants Mr. Sattaru, Mr. Penmatsa, and/or Mr. Penumetcha. Count IV alleges the same harms and damages as above. *See id.* at ¶¶ 49–52.

17. Lastly, Count V alleges negligence against the Defendant Companies on similar grounds as Count IV, and alleges the same harms and damages. *See id.* at ¶¶ 53–56.

18. The Underlying Lawsuit notes there is related, ongoing criminal prosecution against Mr. Sattaru in *Missouri v. Venkatesh Sattaru*, Case No. 2311-CR04219 / 2311-CR0421909-01, charging him with Trafficking for the Purposes of Slavery/Involuntary Servitude/Peonage or Forced Labor; Contributing to Human Trafficking through Misuse of Documentation; Accessory to Domestic Assault in the First Degree; Armed Criminal Action; Kidnapping in the First-Degree, and Felony Abuse through Forced Labor. The probable cause in the Indictment statement identifies John Doe as a twenty-year-old Indian national and Mr. Sattaru's cousin. The criminal case indictment is the first exhibit to the Underlying Petition in **Exhibit A**. *See* Exhibit A, at p. 13.

**The Policies**

19. Praetorian issued successive one-year homeowners policies, Policy No. PHP4587004, with policy periods from March 22, 2022 to March 22, 2023, and from March 22, 2023 to March 22, 2024 to named insureds Mr. and Mrs. Sattaru, which provide certain homeowner's liability coverage subject to their terms and conditions (the "Policies"). True and accurate copies of the Policies are attached as **Exhibit C** and **Exhibit D**, respectively.

20. Subject to all of their terms and conditions, including those found in any endorsements or amendments, the Policies provide property and personal liability coverage with a personal liability coverage limit of $300,000 per occurrence with a $1,000 deductible.

21. The Policies provide in relevant part:

5

## HOMEOWNER AMENDED DECLARATION

\*\*\*

**DEFINITIONS**

\*\*\*

3. "Business" means:
   a. A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or
   b. Any other activity engaged in for money or other compensation, except the following:
      (1) One or more activities, not described in (2) through (4) below, for which no "insured" receives more than $2,000 in total compensation for the 12 months before the beginning of the policy period;
      (2) Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;
      (3) Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or
      (4) The rendering of home day care services to a relative of an "insured".

\*\*\*

5. "Insured" means:
   a. You and residents of your household who are:
      (1) Your relatives; or
      (2) Other persons under the age of 21 and in your care or the care of a resident of your household who is your relative.
   . . .
   Under both Section I and II, when the word an immediately precedes the word "insured", the words an "insured" together mean one or more "insureds."

\*\*\*

8. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:
   a. "Bodily injury"; or
   b. "Property damage".

\*\*\*

**SECTION II – LIABILITY COVERAGES**
**A. Coverage E – Personal Liability**
If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:
   1. Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured";[1] and

---

[1] *See* Missouri Special Provision Endorsement below amending this insuring agreement.

2. Provide a defense a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defense ends when our limit of liability for the "occurrence" has been exhausted by payment of a judgment or settlement.

\*\*\*

## SECTION II – EXCLUSIONS
**E. Coverage E – Personal Liability . . .**
Coverage **E** … do[es] not apply to the following:

### 1. Expected Or Intended Injury
"Bodily injury" or "property damage" which is expected or intended by an "insured", even if the resulting "bodily injury" or "Property damage":
- a. Is of a different kind, quality or degree than initially expected or intended; or
- b. Is sustained by a different person, entity or property than initially expected or intended.

### 2. "Business"
a. "Bodily injury" or "property damage" arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employes an "insured".

This Exclusion E.2. applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business". [ . . . ]

\*\*\*

### 7. Sexual Molestation, Corporal Punishment Or Physical Or Mental Abuse
"Bodily injury" or "property damage" arising out of sexual molestation, corporal punishment or physical or mental abuse[.]

### F. Coverage E – Personal Liability
Coverage **E** does not apply to:

\*\*\*

6. "Bodily injury" to you or an "insured" as defined under Definition 5.a. or b.
This exclusion also applies to any claim made or suit brought against your or an "insured" to:
- a. Repay; or
- b. Share damages with;
another person who may be obligated to pay damages because of "bodily injury" to an "insured".

\*\*\*\*

## SECTION II – CONDITIONS

7

\*\*\*

B. Severability Of Insurance

This insurance applies separately to each "insured". This condition will not increase our limit of liability for any one "occurrence".

C. Duties After "Occurrence":

In case of an "occurrence", you or another "insured" will perform the following duties that apply. We have no duty to provide coverage under this policy if your failure to comply with the following duties is prejudicial to us. You will help us by seeing that these duties are performed:
1. Give written notice to us or our agent as soon as is practical, which sets forth:
    a. The identify of the policy and the "named insured" shown in the Declarations;
    b. Reasonably available information on the time, place and circumstances of the "occurrence"; and
    c. Names and addresses of any claimants and witnesses;
2. Cooperate with us in the investigation, settlement or defense of any claim or suit;
3. Promptly forward to us every notice, demand, summons or other process relating to the "occurrence';
4. At our request, help us:
    a. To make settlement;
    b. To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";
    c. With the conduct of suits and attend hearings and trials; and
    d. To secure and give evidence and obtain the attendance of witnesses;

**\*\*\***

6. No "insured" shall, except at such "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury".

\*\*\*

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
SPECIAL PROVISIONS – MISSOURI**
\*\*\*

### SECTION II – LIABILITY COVERAGES
### A. Coverage E – Personal Liability
Paragraph 1. is replaced by the following in all forms and in Endorsement HO 24 82:
1. Pay up to our limit of liability for the damages for which an "insured" is legally liable; and

Paragraph 1. is replaced by the following in Endorsement HO 24 10:
2. Pay for the damages for which an "insured" is legally liable, subject to the Aggregate Limit of Liability as shown in the Schedule and described in Section II – Conditions, A. Aggregate Limit of Liability; and

### SECTION II – EXCLUSIONS
### E. Coverage E – Personal Liability and Coverage F – Medical Payments to Others

The following paragraphs are added:
**9. Failure to Supervise or Negligent Supervision**
"Bodily injury" or "property damage" arising out of failure to supervise or the negligent supervision of a person that results in one or more of the excluded events in 6. Communicable Disease, 7. Sexual Molestation, Corporal Punishment or Physical or Mental Abse and 8. Controlled Substance above.

**Disclaimer of Coverage Letter to Mr. Sattaru**

22. Upon being notified of the Underlying Lawsuit, Praetorian reviewed for coverage and issued a disclaimer of coverage letter to Mr. Sattaru on September 12, 2025 ("Disclaimer letter") as to the Policies.

23. The Disclaimer letter notified Mr. Sattaru that Praetorian was disclaiming coverage under the Policies' provisions for an "Occurrence" resulting in "Bodily Injury" or "Property Damage."

24. The Disclaimer further notified Mr. Sattaru that Praetorian was disclaiming coverage under certain exclusions and endorsements, including the exclusions for "Expected or Intended Injury," "Sexual Molestation, Corporal Punishment or Physical or Mental Abuse," "Business," "Failure to Supervise or Negligent Supervision," and the exclusion of coverage for bodily injury to relatives and household residents under twenty-one years of age.

25. The Disclaimer advised Mr. Sattaru that Praetorian was reserving its rights under the Policies, including the right to assert additional defenses to coverage, that the coverage position expressed therein was not a waiver of any terms, conditions, exclusions, or other provisions of the Policies, and that Praetorian reserved its right to file a judicial action for declaratory relief to determine its rights and duties under the Policies.

26. A judicial declaration is necessary and appropriate at this time so that Praetorian can ascertain its coverage obligations to Mr. Sattaru for defense and indemnity under the Policies with regard to the Underlying Lawsuit. A judicial declaration of the parties' rights and

obligations under the Policy will obviate further disputes and terminate the uncertainty and controversy that has given rise to this proceeding.

**Reservation of Rights Letter to Mrs. Sattaru**

27. Praetorian issued a reservation of rights letter to Mrs. Sattaru on September 26, 2025 ("ROR letter"), reserving its rights under the Policies.

28. The ROR letter advised Mrs. Sattaru that Praetorian was disclaiming coverage under the Policies' provisions for an "Occurrence" resulting in "Bodily Injury" or "Property Damage."

29. The ROR further advised Mrs. Sattaru that Praetorian was disclaiming coverage under certain exclusions and endorsements, including the exclusions for "Expected or Intended Injury," "Sexual Molestation, Corporal Punishment or Physical or Mental Abuse," "Business," "Failure to Supervise or Negligent Supervision," and the exclusion of coverage for bodily injury to relatives and household residents under twenty-one years of age.

30. The ROR letter outlined the coverage questions pertaining to the Policies' provisions with respect to the negligence claim against her in the Underlying Lawsuit and reserved Praetorian's rights to later disclaim coverage altogether, including the right to assert additional defenses to coverage, that the coverage position expressed therein was not a waiver of any terms, conditions, exclusions, or other provisions of the Policies, and that Praetorian reserved its right to file a judicial action for declaratory relief to determine its rights and duties under the Policies.

31. Praetorian is currently defending Mrs. Sattaru in the Underlying Lawsuit subject to Praetorian's reservation of rights but Praetorian does not believe it is obligated to defend Mrs.

Sattaru under the Policies as it issue and has a good faith coverage dispute as to any duty to defend.

32. A judicial declaration is necessary and appropriate at this time so that Praetorian can ascertain its coverage obligations to Mrs. Sattaru for defense and indemnity under the Policies with regard to the Underlying Lawsuit. A judicial declaration of the parties' rights and obligations under the Policy will obviate further disputes and terminate the uncertainty and controversy that has given rise to this proceeding.

**COUNT I – DECLARATORY JUDGMENT ON THE POLICIES AS TO MR. SATTARU**

33. Praetorian incorporates by reference, as if fully set forth herein, the allegations set forth in the preceding paragraphs.

34. Praetorian contends that no coverage exists under the Policies for any claims made by Mr. Sattaru arising from or related to the Underlying Lawsuit, and that Praetorian owes neither a duty to defend nor a duty to indemnify him under the Policies for any claims or damages arising from or related to the Underlying Lawsuit.

35. Praetorian contends the Underlying Lawsuit does not seek covered damages for personal liability under the Policies because none of the counts allege an "Occurrence" causing "Bodily Injury" or "Property Damage."

36. Praetorian contends that even if an "Occurrence" is alleged under the Policies, the allegations in the Underlying Lawsuit are subject to the "Expected or Intended" Exclusion in that the Underlying Petition alleges Mr. Sattaru intentionally assaulted and battered, falsely imprisoned, and knowingly trafficked John Doe for forced labor.

37. Praetorian also contends the allegations in the Underlying Lawsuit are subject to the Exclusion for "Sexual Molestation, Corporal Punishment or Physical or Mental Abuse" in

11

that John Doe's claimed damages implicate physical and mental abuse as well as corporal punishment resulting from alleged repeated physical beatings, being forced to sleep on the floor under constant video surveillance, inhumane treatment, isolation from his family, a "litany of abuse", and unlawful and unjustified assault and touching, all of which were allegedly committed to compel John Doe's forced labor for Mr. Sattaru's benefit and/or enjoyment.

38. Praetorian contends the allegations in the Underlying Lawsuit are subject to the Exclusion for "Failure to Supervise or Negligent Supervision", which further excludes events in the above-mentioned exclusion for "Sexual Molestation, Corporal Punishment or Physical or Mental Abuse", as John Doe was alleged to be under Mr. Sattaru's care.

39. Praetorian additionally contends the allegations in the Underlying Lawsuit are subject to the "Business" Exclusion in that the Underlying Lawsuit alleges conduct of Mr. Sattaru involving a business in that the Underlying Lawsuit alleges John Doe's damages arose in connection with forced labor, involuntary servitude, peonage, and slavery for the benefit of Mr. Sattaru and/or other Underlying Defendants and/or Defendant Companies allegedly owned by, operated by, or employing Mr. Sattaru.

40. Praetorian also contends there is no coverage for the allegations in the Underlying Lawsuit because John Doe is an insured under the Policies, and the Policies exclude coverage for bodily injury to an insured, which is defined to include "[y]ou and residents of your household who are (1) Your relatives; or (2) Other persons under the age of 21 and in your care or the care of a resident of your household who is your relative" in that John Doe was Mr. Sattaru's cousin and twenty years old when he resided in Mr. and Mrs. Sattaru's care and was therefore an insured under the Policies.

41. Because there is no coverage under the Policies, Praetorian owes neither a duty to defend nor indemnify Mr. Sattaru under them.

42. Based on these allegations, there is a present and justiciable controversy or dispute over coverage under the Policies, including whether Praetorian has a duty to defend Mr. Sattaru from the allegations in the Underlying Lawsuit, and the controversy is ripe for a determination.

WHEREFORE, Plaintiff Praetorian Insurance Company prays this Court to enter its declaratory judgment in its, declaring that no coverage exists under the Policies for any of the claims, allegations, or damages sought against Mr. Sattaru in the Underlying Lawsuit, and that Praetorian owes neither a duty to defend nor to indemnify Mr. Sattaru for any damages or other relief sought from him with regard to the Underlying Lawsuit, or any allegations made against him in it, or otherwise in connection with any claims or allegations made, or damages sought, from him in the Underlying Lawsuit, for its costs, and any further orders and relief this court deems just and proper under the circumstances

## **COUNT II – DECLARATORY JUDGMENT ON THE POLICIES AS TO MRS. SATTARU**

43. Praetorian incorporates by reference, as if fully set forth herein, the allegations set forth in the preceding paragraphs.

44. Praetorian contends that no coverage exists under the Policies for any claims made by Mrs. Sattaru arising from or related to the Underlying Lawsuit, and that Praetorian owes neither a duty to defend nor a duty to indemnify her under the Policies for any claims or damages arising from or related to the Underlying Lawsuit.

13

45. Praetorian contends the Underlying Lawsuit does not seek covered damages for personal liability under the Policies because none of the counts allege an "Occurrence" causing "Bodily Injury" or "Property Damage."

46. Praetorian contends that even if an "Occurrence" is alleged under the Policies, the allegations in the Underlying Lawsuit are subject to the "Expected or Intended" Exclusion in that the Underlying Petition alleges Mrs. Sattaru intentionally conspired to commit battery against, falsely imprisoned, and knowingly trafficked John Doe for forced labor.

47. Praetorian also contends the negligence allegations in the Underlying Lawsuit are subject to the "Expected or Intended" Underlying Lawsuit in that the negligent conduct would not have occurred but for the alleged intentional conduct of Underlying Defendants.

48. Praetorian contends the allegations in the Underlying Lawsuit are subject to the Exclusion for "Sexual Molestation, Corporal Punishment or Physical or Mental Abuse" in that Mrs. Sattaru knew the assaults and batteries—including repeated physical beatings, being forced to sleep on the floor under constant video surveillance, inhumane treatment, isolation from his family, a "litany of abuse", and unlawful and unjustified assault and touching—were being committed by the other Underlying Defendants against John Doe and agreed that they be committed as a means of achieving John Doe's forced labor for her benefit and/or enjoyment while John Doe was under her care, custody, and/or control.

49. Praetorian contends the allegations in the Underlying Lawsuit are subject to the Exclusion for "Failure to Supervise or Negligent Supervision", which further excludes events in the above-mentioned exclusion for "Sexual Molestation, Corporal Punishment or Physical or Mental Abuse", as John Doe was alleged to be under Mrs. Sattaru's care, custody, and/or control.

50.     Praetorian contends there is no coverage for the allegations in the Underlying Lawsuit because John Doe is an insured under the Policies, and the Policies exclude coverage for bodily injury to an insured, which is defined to include "[y]ou and residents of your household who are (1) Your relatives; or (2) Other persons under the age of 21 and in your care or the care of a resident of your household who is your relative" in that John Doe was Mrs. Sattaru's cousin by marriage and twenty years old when he resided in Mr. and Mrs. Sattaru's care and was therefore an "insured" under the Policies.

51.     Praetorian additionally contends the allegations in the Underlying Lawsuit are subject to the "Business" Exclusion in that the Underlying Lawsuit alleges conduct of Mrs. Sattaru involving a business in that the Underlying Lawsuit alleges John Doe's damages arose in connection with forced labor, involuntary servitude, peonage, and slavery for the benefit of Mrs. Sattaru and/or other Underlying Defendants and/or Defendant Companies allegedly owned by, operated by, or employing Mrs. Sattaru.

52.     Because there is no coverage under the Policies, Praetorian owes neither a duty to defend nor indemnify Mrs. Sattaru under them.

53.     Based on these allegations, there is a present and justiciable controversy or dispute over coverage under the Policies, including whether Praetorian has a duty to defend Mrs. Sattaru from the allegations in the Underlying Lawsuit, and the controversy is ripe for a determination.

WHEREFORE, Plaintiff Praetorian Insurance Company prays this Court to enter its declaratory judgment in its favor, declaring that no coverage exists under the Policies for any of the claims, allegations, or damages sought against Mrs. Sattaru in the Underlying Lawsuit, and that Praetorian owes neither a duty to defend nor to indemnify Mrs. Sattaru for any damages or

other relief sought from her with regard to the Underlying Lawsuit, or any allegations made against her in it, or otherwise in connection with any claims or allegations made, or damages sought, from her in the Underlying Lawsuit, for its costs, and any further orders and relief this court deems just and proper under the circumstances.

Respectfully Submitted,

SANDBERG PHOENIX & von GONTARD, P.C.

By: */s /Aaron D. French*
Aaron D. French, 50759MO
Stefanie G. Brody 70897MO
701 Market St. – 6th Floor
St. Louis, MO 63101
314-231-3332
314-241-7604 (fax)
afrench@sandbergphoenix.com
sbrody@sandbergphoenix.com

*Attorneys for Plaintiff*